UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY HOUGH,
    Plaintiff,

v.

                                             Case No. 06-10764

STATE FARM INSURANCE COMPANY,
    Defendant.                          Honorable Patrick J. Duggan
_____/

### ORDER DENYING DEFENDANT'S MOTION *IN LIMINE*

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 22, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

On January 5, 2006, Plaintiff Wendy Hough filed suit against Defendant State Farm Insurance Company (hereinafter "Defendant" or "State Farm") in Wayne County Circuit Court seeking no-fault insurance benefits. On February 21, 2006, Defendant removed the action to this Court on the basis of diversity jurisdiction. Presently before this Court is Defendant's motion *in limine* seeking to exclude the testimony of Plaintiff's treating physician and expert witness, Dr. Wheeler, regarding the performance of a discogram. The Court held a hearing on Defendant's motion on May 15, 2007.

**I.    Background**

On April 29, 2004, Plaintiff was a passenger in a car driven by her mother, Jeanette Allen, when another vehicle crossed into their lane and hit their vehicle head-on. Plaintiff suffered

injuries to her spine as a result of the accident.

Plaintiff filed claims as a resident relative to collect no-fault benefits from Defendant. Plaintiff collected benefits for medical expenses and wage loss arising from the accident. Plaintiff's lawsuit seeks benefits for attendant care, replacement services, mileage, and medical expenses.

Dr. Wheeler is Plaintiff's treating physician and expert witness. Dr. Geiringer is Defendant's expert witness. Defendant seeks to exclude the *de bene esse* deposition testimony of Dr. Wheeler regarding the results of Plaintiff's discogram and the reliability of a discogram.

A discogram is an invasive diagnostic procedure used to determine the cause of a patient's back pain. It is performed by injecting a contrast dye into several discs of the spine. One component of a discogram involves using Computed Tomography (CT), known colloquially as a cat scan, to determine whether there is abnormal disc morphology. The second component involves pain provocation in the different levels of the spine which were injected with contrast dye. To perform the second component, contrast dye is injected into normal discs and discs that may be the source of the back pain. The examiner asks non-leading questions while stimulating the injected discs. The patient's response to the stimulation of the normal discs is then compared with the stimulation of the potentially abnormal discs. The results of both components are then used to determine the source of the back pain.

## II.  Discussion

Defendant argues that all testimony regarding Dr. Wheeler's discogram must be excluded because it is unreliable scientific evidence and "this Court must hold an evidentiary hearing

regarding the scientific validity of the test performed by Dr. Wheeler."[1] (Dft.'s Mot. at 4).

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) set forth the standard governing the admissibility of scientific evidence proffered by an expert. The standard set forth in *Daubert* has been incorporated in Rule 702 of the Federal Rules of Evidence, *Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 294 (6th Cir. 2007), which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Nonetheless, "[i]n *Daubert*, the Supreme Court provided a nonexhaustive list of factors which may, in any given case, bear on a trial judge's gatekeeping determination." *Johnson v. Manitowoc Boom Trucks*, 06-5145, 2007 U.S. App. LEXIS 9895, *10 (April 30, 2007)(recommended for full-text publication). "These factors include: (1) whether a 'theory or technique . . . can be (and has been) tested'; (2) whether the theory 'has been subject to peer review and publication'; (3) whether, with respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and (4) whether the theory or technique enjoys 'general acceptance' within a

---

[1] To the extent that Defendant argues that an evidentiary hearing is required under *Daubert*, the Sixth Circuit has held otherwise. *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999)(stating that a court "is not required to hold an actual hearing to comply with *Daubert* . . . .").

3

'relevant scientific community." *Id.* (quoting *Daubert*, 509 U.S. at 592-94, 113 S. Ct. at 2796-97).

With respect to the first *Daubert* factor, Dr. Wheeler testified that the discography procedure has been tested. Dr. Wheeler mentioned several studies showing various results that were conducted as early as 1968. Dr. Wheeler, however, did mention that because the discrogram procedure is invasive there are ethical issues that prevent a large number of subjects from being studied. (Pl.'s Resp. Ex. 4, Dr. Wheeler Dep. at 60-63). Dr. Geiringer stated in his report that the discrogram procedure has been tested. (Dft.'s Br. Ex. 3, Dr. Geiringer Rep. at 1). Thus, based on the statements made by the parties' proffered experts, discography has been tested, albeit on a smaller scale than non-invasive techniques.

With respect to whether discography has been subjected to peer review and publication, Dr. Wheeler cited the most recent metanalysis, which was published in the January 2007 edition of *Pain Physician*.[2] The *Pain Physician*'s website describes the publication as "a peer-reviewed, multi-disciplinary journal written by and directed to an audience of interventional pain physicians, clinicians and basic scientists with an interest in interventional pain management and pain medicine," which "presents the latest studies, research, and information vital to those in the emerging specialty of interventional pain management." *See* Pain Physician, www.painphysicianjournal.com (last visited May 11, 2007). Furthermore, Dr. Wheeler read the results of this study, which concluded:

---

[2]Although neither party has provided the name of this study, the Court's independent research revealed that a study entitled "Systematic Review of Discography as a Diagnostic Test for Spinal Pain: An Update," authored by Ricardo M. Buenaventura et al., was published in the January 2007 issue of *Pain Physician*. *See* Pain Physician, www.painphysicianjournal.com (follow "Past Issues" hyperlink, then follow "January 2007" hyperlink).

4

> Evidence is strong for the diagnostic accuracy of discography as an imaging tool. Evidence is also strong for the ability of the discography to evoke pain. There is strong evidence supporting the role of discography in identifying that subset of patients with lumber discogenic pain.[3] There is moderate evidence supporting the role of discography in identifying a subset of patients with cervical discogenic pain. There is limited evidence supporting the role of discography in identifying a subset of patients with thoracic discogenic pain.

(Dr. Wheeler Dep. at 52). Although Dr. Geiringer's report states that there are no "carefully designed research studies . . . that have been performed for the discogram," (Dr. Geiringer Rep. at 1; *see also* Dft.'s Br. Ex. 4, Dr. Geiringer Dep. at 75), unlike Dr. Wheeler, Dr. Geiringer does not provide any specific authority substantiating his statements. Consequently, this Court believes that Plaintiff has provided sufficient evidence that the discogram procedure has been subject to peer review and publication.

With respect to the third *Daubert* factor, Dr. Wheeler testified that studies of the discogram procedure have produced mixed results. Dr. Wheeler described a study conducted in 1968 by Holt. (Dr. Wheeler Dep. at 60). According to Dr. Wheeler, although this study produced a 37 percent false-positive rate, other studies have yielded more favorable results. (*Id.* at 60-61). Dr. Wheeler mentioned "a study done by Walsh in 1990 . . . published in the Journal of Bone and Joint Surgery," which had a false-positive rate of zero percent. (*Id.* at 61). Dr. Wheeler also stated other studies have provided a "potentially false-negative rate." (*Id.* at 62). Dr. Geiringer's report does not mention a specific study, but he does state that he has "seen many patients in whom discogram was 'positive' and then underwent treatment, sometimes as invasive as back operation, without success." (Dr. Geiringer Rep. at 1).

---

[3]The discogram performed on Plaintiff involved the lumber section of her spine.

Although, by Dr. Wheeler's own admission, the studies have found varying rates of false-positives, this Court does not believe that these results undermine the reliability of the discography. Dr. Wheeler pointed out that the research study by Holt suffered from design problems, including calling "a positive response an abnormal radiographic finding, not pain provocation" and using "an older form of contrast dye, which is no longer used, because it's known to be a tissue irritant." (Dr. Wheeler Dep. at 60-61). In addition, Dr. Wheeler stated that if a discogram is performed correctly, the "majority of the literature" shows a "[l]ow false-positive rate." (*Id.* at 63).

Furthermore, Dr. Wheeler described that every discogram procedure is performed using a control. As stated above, a discrogram is an invasive diagnostic procedure. One aspect of the procedure involves injecting a contrast dye into the middle of several discs, which is done to provoke pain. In addition to injecting the contrast dye into the discs the physician suspects to be abnormal, normal discs are also injected, allowing the patient's response from the abnormal discs to be contrasted with the patient's response from the normal discs. This is done by asking the patient non-leading questions while stimulating the injected discs. Thus, it is apparent from Dr. Wheeler's description that by using a control, false-positive rates are reduced. (*See also id.* at 42-43 (describing the protocol he follows when performing a discogram)). Thus, the Court concludes that the use of a control and the fact that the majority of the literature shows a low false-positive rate weighs in favor of allowing Dr. Wheeler's deposition testimony to be presented to the jury.

Finally, this Court also believes that Plaintiff has provided sufficient evidence of the discogram's "general acceptance within the relevant scientific community." Although Dr.

Geiringer stated in his deposition and in his report that "[m]any experts at the national level in musculoskeletal medicine . . . remain very skeptical about" the use of discograms, (Dr. Geiringer Rep. at 1), Dr. Wheeler testified that "the position of the North American Spine Society and the American Society of Interventional Pain Physicians is exactly the opposite." (Dr. Wheeler Dep. at 50).

In conclusion, based on the testimony of Dr. Wheeler specifically describing the testing of the technique employed by examiners performing discograms, the articles published on discograms, the results of studies finding low false-positive rates, and the general acceptance of discogram by two national organizations, this Court concludes that Plaintiff is able to proffer Dr. Wheeler's testimony regarding the performance of the discogram. While the Court's conclusion is based almost exclusively on the testimony of Dr. Wheeler himself, "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798. Furthermore, the Court does not believe, as Plaintiff contends in her response brief, that Defendant should be prohibited from offering the testimony of Dr. Geiringer that discography is not a valid or reliable procedure. Plaintiff will have the opportunity to offer Dr. Wheeler's testimony and had the opportunity to cross-examine Dr. Geiringer at his *de bene esse* deposition. *See id.*

**SO ORDERED.**

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Barry J. Goodman, Esq.
Stanley J. Feldman, Esq.
James Hewson, Esq.
Diane L. Aimar-Saylor, Esq.